# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 50388 | **DATE** | 12/5/2012 |
| **CASE TITLE** | Ashman, et al. v. Winnebago County Sheriff's Department, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motion to sever [32] is granted. The clerk is ordered to sever the claims of Kidd and Bunk from this case, to treat the claims of each of these plaintiffs as separate actions, and to assign separate docket numbers to each of those actions. Because these cases involve claims under USERRA, no filing fee is required. All three plaintiffs are directed to file separate amended complaints containing only their claims on or before January 4, 2013. Failure to file an amended complaint will result in dismissal of that plaintiff's case.

Docketing to mail notices.

■[ For further details see text below.]

On July 3, 2012, plaintiffs, James Kidd, Matthew B. Ashman, and Matthew Bunk, filed a four-count, second-amended complaint against defendants, Richard Meyers, Andrea Tack, Tom Key, Kurt Ditzler, Rocco Wagner, and the Winnebago County Sheriff's Department arising out of alleged discriminatory terminations of their employment. In Count I, plaintiffs allege that defendants terminated their employment based on their status as members of the Illinois National Guard, Army, and Marines, in violation of The Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 et seq. ("USERRA"). In the remaining counts, plaintiffs assert supplemental state law claims for violations of the Local Government Employees Benefits Continuation Act, 50 ILCS 140/1 et seq. ("Benefits Continuation Act") (Count II), the Public Employee Armed Services Rights Act, 5 ILCS 330/1 et seq. ("Armed Services Rights Act") (Count III), and the Military Leave of Absence Act, 5 ILCS 325/1 et seq. ("Leave of Absence Act") (Count IV). Kidd and Ashman join in all Counts. Bunk joins in Counts I, III, and IV.

Before the court is defendants' motion to sever the complaints of the three plaintiffs so that each proceeding is an independent action to be tried separately, pursuant to Federal Rules of Civil Procedure 20 and 21. For the following reasons, defendants' motion to sever is granted.

## I. BACKGROUND

Kidd, Ashman, and Bunk were all employed by the Sheriff's Department. Kidd was employed from 1999 to 2008, Ashman was employed from 1999 to 2008, and Bunk was employed from 1998 to 2006.[1] All three were military personnel and all three had a duty to attend training sessions one weekend per month and ordered to active duty for an additional two weeks per year for annual training. In addition, Ashman and Kidd were deployed to various places around the world at different time periods. Bunk was deployed in 2009, but this occurred subsequent to his alleged constructive termination. In or about July 2007, all three plaintiffs filed charges alleging harassment based on military status against the Sheriff's Department with the Illinois Department of Human Rights ("IDHR"). Together they allege that they were subject to routine harassment,

discrimination, and adverse employment actions as a result of their military status. Specifically, all three allege that they were assigned to posts traditionally reserved for the purposes of punishment and that the harassment intensified subsequent to their filing of a complaint with the IDHR.

Both Kidd and Ashman allege that the Sheriff's Department improperly withheld Federal Insurance Contribution Act ("FICA") tax from their differential pay. Both also allege that the Sheriff's Department failed to make payments into their respective retirement accounts. They allege that they were both subject to increased harassment by the Sheriff's Department subsequent to filing charges with the IDHR. Finally, both allege that they were forced to partake in IDHR meetings where they were ordered to sign papers which falsely indicated that they refused to cooperate with the Sheriff's Department.

Ashman and Bunk together allege that the Sheriff's Department failed to make differential payments during their deployments, which is required by the Benefits Continuation Act. Differential payments are payments which are the difference between an employee's regular salary and the employee's base pay for military service. These payments are payable to employees of local government who are mobilized to active military duty.

Kidd alone alleges numerous instances of harassment. He alleges that he was denied a 90-day readjustment period, which is provided under USERRA, when he returned from active duty. He also alleges that while he was deployed in Iraq, he was denied the opportunity to participate in "shift bidding," a process by which shift assignments in the Sheriff's Department are distributed to Sheriff's employees. In addition, he alleges that he was ordered to work the day after he suffered an injury from a work-related truck accident. He also alleges that he was suspended in April 2008 based on the pretext of an incident that occurred in the Mental Health Unit of the Corrections Facility. Subsequently, he alleges he was forced to partake in a disciplinary hearing regarding the incident, despite being injured and on leave as a result of the work-related truck accident. Finally, Kidd alleges that he was terminated on June 5, 2008, based on the pretext of the use of unnecessary force in an incident that occurred June 2, 2008.

Ashman alleges that, during his deployment, the Sheriff's Department failed to accrue his vacation time. He also alleges that he was denied a position with the K9 unit because of his National Guard obligations. He was also suspended based on the "No-Call No-Show" policy when he missed a shift because of his military obligations. A "No-Call No-Show" violation occurs when an employee of the Sheriff's Department misses a day of work without notifying the Department, however, Bunk alleges that he notified the Sheriff's Department of the military obligations which kept him from returning to work. On April 25, 2007, Ashman was disciplined for distributing union election fliers during his lunch break. After filing charges with the IDHR, the Sheriff's Department canceled his prestigious overtime assignment. In early 2008, Ashman was again suspended for a "No-Call No-Show" violation after visiting his newborn son, though he alleges he notified his supervisor that he was taking leave under the Family and Medical Leave Act, 29 U.S.C. 2601 et seq. On July 16, 2008, Ashman was ultimately terminated under the alleged pretext of the "No-Call No-Show" violations.

Bunk alleges that in early 2006, he was told by Community Emergency Response Team ("CERT") leaders that he would have to choose between his National Guard duties and CERT. He alleges that he was constructively terminated from his position with CERT in February 2006. He alleges that after his constructive termination, and subsequent to filing his complaint with the IDHR, the Sheriff's Department began to harass his wife, who was a deputy with the Sheriff's Department. He alleges that his wife was falsely reprimanded for making disrespectful comments to a supervisor within the Sheriff's Department in retaliation for his attempt to enforce his rights under USERRA.

## II. MOTION TO SEVER

In their motion to sever, defendants argue that the claims of the three plaintiffs are improperly joined and that, even if properly joined, the court should exercise its discretion and sever the complaints into three separate pleadings.

Rule 20 provides that plaintiffs may join if: (1) "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

Rule 21 provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. "[A] district court may sever claims under Rule 21, creating two separate proceedings, so long as the two claims are 'discrete and separate.'" Gaffney v. Riverboat Servs. of Ind., Inc., 451 F.3d 424, 442 (7th Cir. 2006) (quoting Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1016 (7th Cir. 2000)).

"Courts have generally deemed 'all logically related events' to comprise a single transaction or occurrence under Fed. R. Civ. P. 20(a)." Benitez v. Am. Standard Circuits, Inc., 678 F. Supp. 2d 745, 769 (N.D. Ill. 2010) (citing Bloomquist v. ZLB Behring, LLC, No. 06 C 6738, 2007 WL 2903181, at *2 (N.D. Ill. Sept. 28, 2007)). If plaintiffs allege discriminatory incidents that arise out of different employment decisions made by different people at different times, then those incidents do not arise out of the same transaction or occurrence. See Bailey v. N. Trust Co., 196 F.R.D. 513, 516 (N.D. Ill. 2000); Maclin v. N. Telecom, Inc., No. 95 C 7485, 1996 WL 495558, at *7 (N.D. Ill. Aug. 28, 1996).

When evaluating whether a particular situation constitutes a single transaction or occurrence under the first prong of Rule 20, courts conduct a case-by-case analysis, considering the following factors:

> [1] the time period during which the alleged acts occurred, [2] whether the acts of discrimination are related, [3] whether there were differing types of adverse employment actions, [4] whether more than one type of discrimination is alleged, [5] whether the same supervisors were involved, [6] whether employees worked in the same department, [7] whether employees were at different geographical locations, and [8] whether a company-wide policy is alleged.

Benitez, 678 F. Supp. 2d at 768–69 (quotation marks omitted); see also McDowell v. Morgan Stanley & Co., 645 F. Supp. 2d 690, 694 (N.D. Ill. 2009) (same).

An analysis of these factors weighs in favor of severing the complaints into three separate proceedings. As to the first factor, where discrimination occurs at different periods in time, a court may sever the claims. See McDowell, 645 F. Supp. 2d at 695 (severing a claim where discriminatory conduct occurred at different periods in time, in different locations, by different supervisors). Here, each plaintiff alleges discriminatory conduct over a span of nearly ten years and each alleges different acts occurring at different moments in time. For example, Bunk alleges that the Sheriff's Department failed to make differential payments to him during his training sessions with the National Guard, but it is unclear when this occurred. Ashman, on the other hand, alleges that the Sheriff's Department failed to make differential payments to him during his active deployment at O'Hare Airport from September 2001 to July 2002. In addition, all three ended their employment with the Sheriff's Department at different times. Bunk claims to have been constructively terminated in February 2006, Kidd was terminated in June 2008, and Ashman was terminated in July 2008.

The second and third factors also weigh in favor of severance. Other than the conclusory allegations of general discrimination and harassment on the part of the Sheriff's Department, there are no allegations that these discriminatory incidents were related to one another. In addition, each individual plaintiff alleges different acts of discrimination. In fact, the only discriminatory act that each plaintiff alleges in common is an assignment to posts traditionally reserved for the purpose of punishment of employees. Plaintiffs also allege that the discriminatory conduct worsened after they had filed their complaints with the IDHR (which were all filed at the same time), a time when Bunk was not an employee of the Sheriff's Department. Lastly, although each plaintiff alleges that their termination was a result of discrimination based on military status, each plaintiff's employment ended for differing reasons and each requires different proofs. Ashman was terminated for "No-Call No-Show" violations, Kidd was terminated for unnecessary use of force, and Bunk claims he was constructively terminated.

Defendants concede the fourth factor because all three plaintiffs allege the same discrimination. Specifically, they each allege discrimination and harassment based on their military status.

The fifth factor does not weigh in favor of or against severance, as it is unclear from the complaint if the same member of the Sheriff's Department was the sole actor responsible for the discriminatory conduct. When the alleged discriminatory conduct is not attributable to a single supervisor this factor weighs in favor of severance. See Maclin, 1996 WL 495558, at *7 (severing claims where allegations occurred at different time periods by different supervisors). Although each individual alleges general discriminatory conduct on the part of the Sheriff's Department, and in some cases by specific employees of the Sheriff's Department, there are no allegations that the same individual was responsible for all the discriminatory conduct from which the plaintiffs allege to have suffered.

Regarding the sixth and seventh factors, courts will also look to whether the discrimination took place in the same geographic region or department. If the conduct occurs in several departments or in distinct geographic regions, a court will likely sever the claims. See Berry v. Ill. Dep't of Human Servs., No. 00 C 5538, 2001 WL 111035, at *17 (N.D. Ill. Feb. 2, 2001) (finding misjoinder and severing claims where, among other things, the plaintiffs were employed at six different facilities). Here, the discrimination occurred mostly within the Corrections Department and in the same geographic region. However, the alleged discrimination and harassment of Bunk also occurred when he served in the Patrol Division and held a position on the CERT team. Therefore, this factor does not weigh in favor of or against severance.

In connection with the eighth factor, despite the fact there are general allegations of routine harassment, discrimination, and adverse employment actions taken by the Sheriff's Department against employees that are military servicemen, there are no allegations that there was a policy throughout the Department to treat military personnel in a discriminatory way. Therefore, this factor weighs in favor of severance.

Based on the foregoing, the court finds that plaintiffs are misjoined under Rule 20.[2] Nevertheless, even if the joinder was proper, the court would exercise its discretion to sever the claims into three separate actions. Rice, 209 F.3d at 1016 ("It is within the district court's broad discretion whether to sever a claim under Rule 21."). If these claims were to be tried together in a single trial,

> the risk of confusion, prejudice, overlapping proof and duplicative testimony would be substantially increased, given the differences between each of the Plaintiffs' situations. At trial, the parties would likely call to testify the individual Plaintiffs, their supervisors, co-workers and witnesses. . . . Such testimony is highly individualized, as the jury would encounter entirely different people, testifying as to one individual Plaintiff. . . . If the Court were to allow a jury to hear a combination of the unique and otherwise distinct circumstances that underlie each of the Plaintiffs' claims, the risk of confusion and prejudice to [the defendants] would be substantial. . . .

McDowell, 645 F. Supp. 2d at 696. Therefore, each case will be tried separately.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to sever is granted. The clerk is ordered to sever the claims of Kidd and Bunk from this case, to treat the claims of each of these plaintiffs as separate actions, and to assign separate docket numbers to each of those actions. Because these cases involve claims under USERRA, no filing fee is required. All three plaintiffs are directed to file separate amended complaints containing only their claims on or before January 4, 2013. Failure to file an amended complaint will result in dismissal of that plaintiff's case.

1. There is no statute of limitations for claims under USERRA. See 38 U.S.C. § 4327(b).

2. Because the court finds that plaintiffs are unable to satisfy the first prong of Rule 20, the court need not address the second prong to determine there are any questions of law or fact common to all plaintiffs.