# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Matthew B. Ashman, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: 11 C 50388 |
| | ) | |
| Winnebago County Sheriff's Department, et al., | ) | |
| | ) | |
| Defendants. | ) | Judge Frederick J. Kapala |

## ORDER

Defendants' motion for summary judgment [65] is granted in part and denied in part, and plaintiff's motion for summary judgment [66] is granted in part and denied in part. Meyers is terminated from this case. The parties are to contact the magistrate judge within the next fourteen days to schedule a settlement conference as to damages.

## STATEMENT

Plaintiff, Matthew Ashman, is a member of the Illinois Army National Guard. He has sued his ex-employer, Winnebago County Sheriff's Department ("WCSD") and various individuals employed by the WCSD who can be safely ignored except as mentioned below, alleging that he was terminated due to his obligations to the National Guard in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq. Currently pending before the court are cross motions for summary judgment as to liability. For the reasons which follow, Ashman's motion is granted in part and denied in part and WCSD's motion is granted in part and denied in part.

## I. BACKGROUND

The facts of this case are largely undisputed and drawn from the parties' respective Local Rule 56.1 statements and the materials attached thereto. After a period of active duty service in the United States Army, Ashman enlisted in the Illinois National Guard in 1996 and has been a member since. Ashman was hired by WCSD as a corrections officer at the Winnebago County Jail on January 8, 1999. He was ultimately terminated from his employment with WCSD on July 16, 2008. At the time of his termination, Ashman was assigned to D-Team at the jail, which worked twelve-hour shifts from 6:00 p.m. until 6:00 a.m.

Under the collective bargaining agreement ("CBA") in effect for the time period relevant to this lawsuit, employees were given "occurrences" for any unscheduled absence from work, being fifteen minutes or more late for work, failure to timely report attendance, and any unscheduled

departure from work lasting more than two hours. If sixty days passed without an occurrence, two accumulated occurrences would be removed from an employee's record. The CBA had a specific, graduated system of discipline as an employee accumulated more occurrences, ranging from warnings to suspensions to an automatic termination at the accumulation of a ninth occurrence. It is undisputed that Ashman was not a model employee when it came to absenteeism. Prior to June 30, 2008, he had accumulated eight occurrences and was thus at risk of an automatic termination in the event he accumulated one more.

On June 30, 2008, the National Guard ordered Ashman to report for duty each day from June 30, 2008 until July 11, 2008 beginning at 8 a.m. Ashman provided the memorandum which memorialized that activation to WCSD. WCSD marked Ashman as on "Military Leave" during each shift he was scheduled to work for that time period, including July 7, 2008. On July 3, 2008, Ashman was informed by his National Guard unit commander that the unit would be granted leave from their military duties for the period of July 4 through July 7, 2008, in celebration of the July 4th holiday. However, Ashman was informed that the unit anticipated that certain transports may arrive during that time frame carrying equipment which would necessitate recalling the unit to provide service. The unit was not ultimately called in while on leave, and Ashman reported back to his unit at 8 a.m. on July 8, 2008. Ashman completed his service requirement and returned to work on July 12, 2008.

On July 9, 2008, the Department of Military Affairs in Springfield, Illinois, issued Orders 191-008 and 191-016. Those orders, apparently cut in an effort to avoid paying the guardsmen who were on leave over the July 4th weekend, represented that Ashman had only been ordered to training by the National Guard from June 30, 2008 through July 3, 2008 and from July 8, 2008 through July 11, 2008. Chief Deputy Kurt Ditzler received the new orders and, to him, Ashman appeared to have no longer been under orders on July 7, 2008, when he missed a regularly-scheduled work shift (July 7, 2008 was the only shift he was scheduled to work between July 4, 2008 and July 7, 2008). Ditzler received those orders through an email from a staff sergeant at Ashman's unit. In that email, the staff sergeant explained to Ditzler that the unit was given a "pass" and thus the new orders were cut, but that the unit remained responsible to return if needed during that time period. The email also noted that the unit was not ultimately utilized during that time period. In any event, Ditzler determined that Ashman's absence on July 7, 2008 was unexcused, since he was not under military obligation according to the more recent orders. Accordingly, after Ashman worked his regularly-scheduled shifts on July 12 and 13, he was terminated pursuant to his accumulation of a ninth occurrence.

Based on the above, Ashman filed a complaint which has been reduced to a single count for violation of USERRA against WCSD, then-Winnebago County Sheriff Richard Meyers, and Ditzler. Both parties have filed motions seeking summary judgment.

## II. ANALYSIS

"Enacted in 1994, USERRA is the latest in a series of veterans' employment rights laws, replacing its most immediate predecessor, the Veterans' Reemployment Rights Act . . . of 1974." Crews v. City of Mount Vernon, 567 F.3d 860, 864 (7th Cir. 2009). "The purposes of USERRA are: '(1) to encourage noncareer service in the uniformed services . . . ; (2) to minimize the disruption to

2

the lives of persons performing service in the uniformed services . . . by providing for the prompt reemployment of such persons upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services.'" Id. (quoting 38 U.S.C. § 4301(a)). "USERRA affords broad protections to service members against employment discrimination . . . ." Id. In relevant part, it provides that "[a] person who . . . has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a). USERRA also provides certain rights to reemployment after a period of service, so long as notice of the service is given and an application for reemployment is timely submitted following the period of service. See 38 U.S.C. §§ 4312, 4313; see generally McGuire v. United Parcel Serv., 152 F.3d 673, 676-77 (7th Cir. 1998). In any event, the courts have been clear that "USERRA is to be liberally construed in favor of those who served their country." McGuire, 152 F.3d at 676.

### A. The Non-Termination Claims

In his complaint, Ashman set out, in addition to the discipline leading to his ultimate termination, a laundry list of other WCSD actions he claims violated USERRA. In its motion for summary judgment, WCSD argues that any claims based on those acts are (1) untimely, (2) not a supported by an adverse employment act, (3) moot, and/or (4) without merit because the record discloses that WCSD would have taken the act regardless of Ashman's military service. Ashman does not reply to any of those arguments. Accordingly, the court treats any such response to those arguments as waived and grants summary judgment to WCSD on all of Ashman's USERRA claims except those arising from the discipline leading to his termination. See Johnson v. Gen. Bd. of Pension & Health Benefits of United Methodist Church, 733 F.3d 722, 729 (7th Cir. 2013) (noting that arguments not raised in opposition to a motion for summary judgment are waived). Moreover, WCSD seeks dismissal of the official capacity claims against Meyers (who is no longer the sheriff and would need to be substituted in any event) and Ditzler as duplicative of Ashman's claims against WCSD itself. Again, Ashman does not respond. Thus, the motion is granted as to the official capacity claims as well. See id. Finally, the court notes that, although it is unclear whether there is an individual capacity claim pled against Meyers or not, there is no indication in the record that Meyers had anything to do with the decision resulting in Ashman's discipline and automatic termination. Thus, there is no basis on which to hold Meyers individually liable, and, presuming such a claim was intended by plaintiff's complaint, the court grants summary judgment in favor of Meyers on that claim. See Moser v. Universal Eng'g Corp., 11 F.3d 720, 723 (7th Cir. 1993) ("The inherent authority of the district court to dismiss a case sua sponte and control its docket is well established.").

### B. The Termination Claim

Ashman seeks summary judgment as to his USERRA termination claim under both a § 4311 discrimination theory and a § 4312 reemployment theory. WCSD argues that Ashman is unable to recover under either theory. Since the facts are undisputed, the court will consider both parties' arguments together. See Nautilus Ins. Co. v. JDL Dev., IX, LLC, No. 10 C 3435, 2012 WL 1156917, at *3-5 (N.D. Ill. Apr. 4, 2012) (considering cross motions together where the facts are

3

undisputed and thus there is no need to consider the evidence in the light most favorable to one party or the other).

The prevailing view of the interaction between § 4311 and § 4312 is that "Section 4312 protects service members at the instant of seeking reemployment, entitling the service member to reemployment in either the position [he] would have been in had [he] not left for military service or a position of like seniority, status and pay, the duties of which the person is qualified to perform." Petty v. Metro. Gov't of Nashville-Davidson Cnty., 538 F.3d 431, 439-40 (6th Cir. 2008) (quotation marks omitted). Meanwhile, "Section 4311 applies after reemployment has occurred and prohibits discrimination with respect to any benefit of employment against persons who serve in the armed services after they return from a deployment and are reemployed." Id. at 440 (quotation marks omitted); see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 304 (4th Cir. 2006) (holding that reemployment rights under § 4312 apply only until the "instant" of reemployment, and thereafter the other USERRA rights, including the protection against discrimination in section § 4311, apply "the next day or even later the same day" (quotation marks omitted)). In this case, Ashman was reemployed for two days after his deployment, so he has no cause of action pursuant to the reemployment rights under § 4312. Thus, the WCSD's motion for summary judgment concerning that claim is granted.

That leaves only Ashman's claim for discrimination pursuant to § 4311. To establish a prima facie USERRA discrimination claim, Ashman must show (a) membership in a uniformed service; (b) performance of a service or an obligation to perform service in a uniformed service; (c) a denial of retention in employment or any benefit of employment by his employer on the basis of that membership or performance of service or obligation; and (d) that the employee's military service or obligation for service was a motivating factor in the employer's adverse decision. See § 4311(a) & (c)(1); Madden v. Rolls Royce Corp., 563 F.3d 636, 638 (7th Cir. 2009). Ashman must also provide evidence that his employer was on notice of his membership and obligation to perform service. See § 4311(c)(1); 20 C.F.R. § 1002.85.

Here, there is no dispute that Ashman was a member of a uniformed service, that he was denied retention of employment, and that he provided notice. WCSD argues, instead, that (1) Ashman was not under a service obligation on July 7 based on the July 9 orders, which results in Ashman not meeting the (b) prong and (2) the service obligation was not a motivating factor in Ditzler's decision to issue Ashman an occurrence for the July 7 missed shift, which resulted in his automatic termination, thus he does not meet the (d) prong.

Turning to the first issue, as of July 7, the undisputed record shows that the only orders which existed informed Ashman that he was on duty from June 30 until July 11. The fact that he was given a day off during that time frame and that, by fortuity, he happened to be geographically close to Rockford on his day off does not change his military obligation. See 20 C.F.R. § 1002.73 (addressing reemployment rights rather than discrimination, but noting that activities done on days off during military service do not affect USERRA rights). Likewise, the fact that later those orders were amended to exclude that day off, purportedly for financial reasons, does not change the fact that Ashman was under a service obligation on July 7 when he missed work. Moreover, Ditzler was explicitly informed by Ashman's unit that he could have been expected to return to duty in Freeport at anytime during the pass if certain events occurred. That those events did not, in fact, occur did

4

not remove Ashman's obligation to perform a service to the uniformed service.

Furthermore, even if the after-the-fact orders could somehow retroactively modify Ashman's obligation on July 7, he would have still been under a service obligation on that day. The regulations to USERRA make it clear that a service obligation does not necessarily begin on the first day of orders. Specifically, the regulations require that "[a]t a minimum, an employee must have enough time after leaving the employment position to travel safely to the uniformed service site and arrive fit to perform the service." 20 CFR § 1002.74. That same regulation goes on to provide examples, including that:

> If the employee performs a full overnight shift for the civilian employer and travels directly from the work site to perform a full day of uniformed service, the employee would not be considered fit to perform the uniformed service. <u>An absence from that work shift is necessitated so that the employee can report for uniformed service fit for duty.</u>

§ 1002.74(a) (emphasis added). On July 7, Ashman was scheduled to work from 6 p.m. until 6 a.m. on July 8 in Rockford. He was required, even under the after-the-fact July 9 orders, to appear on July 8 at 8 a.m. in Freeport, Illinois fit for duty. Although he would have had time to arrive by 8 a.m., there is no way he would have been fit for duty the following day based on the above regulation. Accordingly, he was under an obligation to the uniformed services to be absent from his overnight shift on July 7 even pursuant to the after-the-fact July 9 orders. Thus, the undisputed facts show that Ashman has met the "b" requirement of a prima facie case.

That leaves only the question of whether Ditzler's decision to assess him an occurrence for an unexcused absence was motivated, at least in part, by Ashman's military obligation. This is the most troubling part of this case, although the parties' briefs barely mention the problem. While it is clear that Ashman was under a military obligation on July 7, based on the July 9 orders a jury could find that Ditzler, reasonably and in good faith, believed otherwise. If the jury were to find that Ditzler, reasonably and in good faith, believed that Ashman was not under military obligation and assigned him an unexcused absence, could it also determine that Ditzler's action was motivated, even in part, by that same military obligation? To put it more succinctly, the issue becomes whether Ditzler's potentially reasonable error in presuming Ashman was not under a military obligation conflicts with any argument that he was ultimately motivated by Ashman's military obligation when he made the decision to discipline Ditzler for his absence.

It is useful to recall that Ditzler, in this case, made two separate errors, or perhaps more accurately made the same error for two separate reasons. The first is an error of fact. He believed, or at least a jury could find he reasonably believed, that Ashman was not under obligation to provide service on July 7 due to the July 9 orders, when in fact the undisputed record now shows Ashman was merely given a day off but was still under obligation to report in the event certain equipment arrived. At least one court has suggested, although it did not end up reaching the issue, that a reasonable mistake of fact could undermine a finding of motivating factor. See <u>Bradberry v. Jefferson Cnty., Tex.</u>, 732 F.3d 540, 551 (5th Cir. 2013) (noting that under USERRA's discrimination section, "it matters whether the County was motivated by Bradberry's military status or only motivated by what it thought [was] . . . a dishonest assertion that his military duty had been

5

extended"). This reading comports with the Supreme Court's determination that USERRA seeks to punish only intentional discrimination. See Staub v. Proctor Hosp., 562 U.S. 411, 131 S. Ct. 1186, 1191 (2011).

Had that error of fact been the only issue in this case, the court may have been convinced to send the case to a jury to resolve Ditzler's ultimate motivation. However, even if Ditzler reasonably believed that Ashman was not under orders on July 7, the regulation quoted above makes it clear that Ashman was nevertheless legally under military obligation on July 7 due to the 8 a.m. start time on July 8. Thus, this error was one of law, Ditzler admitted in his deposition he simply did not know the night-before-absence regulation existed. In Erickson v. United States Postal Service, the United States Postal Service terminated an employee under military obligation after he had been gone long enough that his reemployment rights had eclipsed. 571 F.3d 1364, 1368 (Fed. Cir. 2009). The Federal Circuit determined that, although his reemployment rights had eclipsed, his rights under the discrimination section had not. The USPS argued that it was not motivated by his military obligation, however, since it believed his military obligation was no longer an impediment under USERRA and was, instead, motivated solely by his absence to terminate him. The Federal Circuit went on to reject that argument, explaining that "[a]n employer cannot escape liability under USERRA by claiming that it was merely discriminating against an employee on the basis of his absence when that absence was for military service." Id. at 1368. This idea, that an adverse employment action taken due to a mistake of the law still qualifies as intentional discrimination, comports with the Supreme Court's interpretation of other intentional discrimination statutes. See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 583 (2010) ("We observed that in some circumstances intentional discrimination could occur without giving rise to punitive damages liability, such as where an employer is unaware of the relevant federal prohibition or acts with the distinct belief that its discrimination is lawful." (emphasis added)). And, of course, it comports with the "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally. Our law is therefore no stranger to the possibility that an act may be intentional for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law." Id. at 581-83 (citations, footnote, and quotation marks omitted). Accordingly, because Ashman was legally under military obligation because of 20 CFR § 1002.74 regardless of the ultimate impact of the July 9 orders, and because Ditzler's ignorance of the regulation does not serve to insulate WCSD from liability, Ashman has established the necessary prima facie case for discrimination.

Having established a prima facie case for discrimination, the burden now shifts to WCSD to show that it would have made the same decision "even if [Ashman] had no military obligations." Madden, 563 F.3d at 638. WCSD has made no attempt to meet this burden, nor could it on this record. Thus, summary judgment is granted in Ashman's favor on his § 4311 discrimination claim arising from the discipline which led to his termination and summary judgment is denied to WCSD on the same claim.

The parties shall contact the magistrate judge's chambers within fourteen days of this order to schedule a settlement conference and, should settlement be unsuccessful, to prepare for a trial on damages before this court. The parties are directed to consider and address the available remedies set out in 38 U.S.C. § 4323(d), (e), & (h); including whether Ashman can meet the "willful" standard

of § 4323(d)(1)(C) for liquidated damages, although given the uncontested nature of Ditzler's ignorance as to the regulation, the court is very dubious of Ashman's ability to do so. See Serrichio v. Wachovia Sec. LLC, 658 F.3d 169, 191-92 (2d Cir. 2011); Fryer v. A.S.A.P. Fire & Safety Corp., 658 F.3d 85, 90-92 (1st Cir. 2011).

### III. CONCLUSION

Based on the foregoing, defendants' motion for summary judgment is granted in part and denied in part, and plaintiff's motion for summary judgment is granted in part and denied in part. Specifically, defendants' motion is granted as to all USERRA claims not arising from the discipline which led to plaintiff's termination. On that claim, summary judgment is granted to defendants as to plaintiff's § 4312 reemployment theory. Also, summary judgment is granted to defendants as to plaintiff's official capacity claims and as to any individual capacity claims against Meyers. The motion is otherwise denied. Plaintiff's motion is granted as to liability only for his § 4311 discrimination theory against WCSD and Ditzler in his individual capacity and otherwise denied.

Date: 2/13/2015                                             ENTER:

                                                            _____
                                                            FREDERICK J. KAPALA
                                                            District Judge